**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**VIDEOJET TECHNOLOGIES INC.,**

      **Plaintiff,**

**v.**                              **Case No.  8:07-CV-1407-T-30MAP**

**RAYMOND GARCIA and**
**CODING SOLUTIONS, INC.,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Raymond L. Garcia's Dispositive Motion to Dismiss or in the Alternative Motion for More Definite Statement With and [Sic] Incorporated Memorandum of Law (Dkt. 17) and Plaintiff's response in opposition thereto (Dkt. 22). The Court, having considered the parties' arguments and being otherwise advised in the premises, finds that Defendant's motion should be denied.

### Background

The dispute in this case involves a provision of an agreement Plaintiff executed on November 19, 1998, (the "Agreement") with Plaintiff's predecessor Videojet Systems International, Inc. ("VSII"), a manufacturer of coding, printing, and laser marking products used to mark commercial and industrial packaging and goods. Initially, Defendant Garcia was employed as a customer service representative servicing the Northeastern Region of the

United States. Defendant's success during the eight years he was employed by Plaintiff is evidenced by his November 3, 2002 promotion to field service manager, followed by a promotion on September 12, 2005, to the position of senior customer service engineer responsible for providing service to Plaintiff's clients throughout Florida, Georgia, South Carolina, North Carolina, Puerto Rico, and parts of Tennessee (the "Southeastern Region"). Having formed Coding Solutions, Inc., ("CSI") and incorporated it under the laws of Florida on August 18, 2006,[1] Defendant Garcia terminated his employment with Plaintiff on September 8, 2006 (Dkt. 2 at 2).

On December 22, 2006, Plaintiff filed a complaint against Defendants Garcia and CSI in the Eighteenth Judicial Circuit Court of Dupage County, Illinois, Case Number 2006-CH 002435, alleging breach of contract by Defendant Garcia and tortious interference with contract by CSI. In its complaint, Plaintiff asserts that Defendant Garcia and CSI are engaged in the business of providing products and services similar to the products and services provided by Plaintiff in various parts of the United States, including the Southeastern Region. Id. Plaintiff seeks preliminary and permanent injunctive relief, compensatory and punitive damages, and attorneys' fees.

On January 25, 2007, Defendants filed a Notice of Removal from state court to the United State District Court for the Northern District of Illinois, Eastern Division ("USDC N.D. Ill."), based upon diversity. See 28 U.S.C. §§ 1332 and 1441(a). Defendants then filed a motion to dismiss the complaint for lack of personal jurisdiction or, in the alternative, an

---

[1]Defendant Garcia is the owner and registered agent for CSI.

order transferring venue over the case to this district "for the convenience of the parties and in the interest of justice," pursuant to 28 U.S.C. § 1404(a). Following a hearing, the USDC N.D. Ill. granted Defendants' request to transfer the case on June 20, 2007. See 28 U.S.C. § 1391(a).[2]

The matter is now before the Court for consideration of Defendant Garcia's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Garcia requests, in the alternative, that Plaintiff's be required to file a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## Standard of Review

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703

---

[2]"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a) (2008). "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. "28 U.S.C.A. § 1391(c). Defendant Garcia is a citizen and resident of the State of Florida, and Coding Solutions, Inc., is a Florida corporation with a principal place of business in Florida.

(11th Cir. 1985). "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief may be granted. Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. As the Supreme Court recently opined:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, id.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964 -1965 (2007). See also Blumel v. Mylander, 919 F.Supp. 423, 425 (M.D. Fla. 1996). When, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## Choice of Law

As an initial matter, the parties in this case are at odds as to which state law applies to this case, that of Florida or Illinois. The Agreement provides, in pertinent part, as follows:

1. Restrictions Following Termination. During my employment with VSI, and for one year after the termination, for any reason of my employment:

A   I will not directly or indirectly, for myself or for any other person or company, perform any services (whether in sales or service) which are the same as or similar to the services performed by me for VSI if such services compete for, solicit, or take away any of VSI's actual or potential customers that I solicited, was in contact with, became aware of or performed services for while I was employed by VSI.

. . . .

3.   One-Year Extension After Enforcement.  If I violate any of the terms of this Agreement and VSI is required to take legal action to enforce such terms, this agreement shall remain in full force and effect during such legal action and for a period of one year after the termination of that action, notwithstanding the provisions of Paragraph 1 above.

4   Miscellaneous.  .  .  .  (d) This agreement shall be construed and interpreted in accordance with the internal laws (without regard to conflicts of laws provisions) of the State of Illinois.

Dkt. 2, Ex. A.

As Defendant acknowledges, generally, a federal court sitting in diversity is to apply the law of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)."Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Id. However, this action was transferred to this district at Defendants' request pursuant to 28 U.S.C. § 1404(a) ("[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"). When such a transfer occurs, courts are instructed to apply the law the transferring court would have applied. See Ferens v. John Deere Co., 494 U.S. 516, 518-19 (1990) (holding that the transferee forum was required to apply the law of the transferor

court)[3] (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964)); <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 243 n.8 (1981); <u>Roofing & Sheet Metal Svcs., Inc. v. La Quinta Motor Inns, Inc.</u>, 689 F.2d 982, 991 (11th Cir. 1982). In <u>Van Dusen</u>, the Supreme Court considered the legislative background of § 1404(a), and several cases interpreting it, and concluded that Congress did not intend to deprive plaintiffs of "whatever advantages may flow from the state laws of the forum they have initially selected," 376 U.S. at 633, holding that, at least where, as here, the defendant seeks the transfer, "[a] change of venue under § 1404(a) generally should be, with respect to state law, but a change in courtrooms" <u>id.</u> at 639. Because this action was filed in Illinois, Illinois is in effect the "forum state," regardless of the venue change, and this Court therefore must apply choice-of-law principles as the federal court in Illinois would have had no transfer been granted. <u>Id.</u> at 639.

    In Florida, when contracting parties[4] indicate in the contract their intention as to the governing law, any dispute under the contract will be governed by such law as long as it is not against Florida's public policy. <u>Punzi v. Shaker Advertising Agency, Inc.</u>, 601 So.2d 599, 600 (Fla. 2d DCA 1992).  As the Florida Supreme Court has explained:

> [C]ourts have uniformly enforced choice-of-law provisions without requiring the parties to brief the law of the chosen forum. <u>See</u>, <u>e.g.</u>, <u>Continental</u>

---

[3]In <u>Ferens</u>, the plaintiff relied on <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487 (1941), which held that federal courts exercising diversity jurisdiction apply the choice of law rules of the forum state. The plaintiff, a resident of Pennsylvania, was able to circumvent Pennsylvania's two-year tort limitations period by instituting an action in Mississippi, a state which had favorable choice of law rules and a six-year statute of limitations for tort actions, and then transferring the suit back to Pennsylvania. The Supreme Court held that the transferee state, which otherwise would have barred plaintiff's claim because of that state's statute of limitations, was now obligated to apply the statute of limitations of the transferor state. <u>Ferens v. John Deere Co.</u>, 494 U.S. at 526-28.

[4]A default was entered on Plaintiff's tort claim against Defendant Coding Solutions, Inc.,  pursuant to Fed. R. Civ. P. 55(a) on June 4, 2008 (Dkt. 40). Thus, this matter is proceeding on the breach of contract claim only against Defendant Garcia.

> Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507, 513-14 (Fla. 1981).
> Moreover, it is incumbent upon the party seeking to avoid enforcement of the
> provision to show that the foreign law contravenes public policy of the forum
> jurisdiction. See Delhomme Indus., Inc. v. Houston Beechcraft, Inc., 669 F.2d
> 1049, 1058 (5th Cir. 1982) ("A choice of law provision in a contract is
> presumed valid until it is proved invalid. The party who seeks to prove such
> a provision invalid because it violates public policy bears the burden of
> proof.").

Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So.2d 306, 311 (Fla. 2000).

The Mazzoni court cautioned, however, that "the countervailing public policy must be

sufficiently important that it outweighs the policy protecting freedom of contract. . . .

[R]outine policy considerations are insufficient to invalidate the choice of law provision."

Id. at 312.

Here, Illinois is the forum state and the parties' Agreement expressly provides that it

is to be construed and interpreted under Illinois law. In determining which law governed an

action to  enforce a restrictive covenant in an employment agreement which contained a

choice of law clause, the Florida district court found that Illinois law is not contrary to the

public policy of Florida, noting that:

> The fact that the law of the forum state is different than the law of the
> foreign state does not mean that the foreign state's law necessarily is
> against the public policy of the forum state. Instead, it is proper for the
> court to ascertain whether the foreign state's law is harmonious in spirit
> with the forum state's public policy. Although the law of Florida and
> the law of Illinois differ as to what constitutes a protectible business
> interest, . . . the law of Illinois is [not] repugnant to the public policy of
> Florida.

Punzi, 601 So.2d at 600.

Defendant's reliance on the decision in <u>Echo, Inc. v. Whitson Co., Inc.</u>, in support of his argument that the Court should disregard the choice of law provision in the Agreement is misplaced. 52 F.3d 702, 705 (7th Cir. 1995) (finding that under Illinois law, distributorship agreements and purchase orders that arise under them are two distinct contracts, precluding offset). There was no dispute regarding the choice of law in <u>Echo</u>. To the contrary, the <u>Echo</u> court noted that when, as in <u>Echo</u>, neither party in a diversity case suggests that the law of a state other than the forum state ought to apply, the forum state's law applies by default. <u>Id.</u> at 707.

As Defendant acknowledges, "under Illinois conflicts principles, the parties' choice will ordinarily be honored unless the law of the chosen state is repugnant to a strong and fundamental policy of Illinois." <u>ISC-Bunker Ramo Corp. v. Altech, Inc.</u>, 765 F.Supp.1310, 1335 (N.D. Ill. 1990). Here, Defendant has neither argued nor are there any indications of bad faith, fraud, or overreaching by Plaintiff. Defendant has not presented any evidence regarding any physical or financial impediments that would prevent him from litigating his case in Illinois, nor has he argued, and this Court is not aware of, any remedy that Defendant will be deprived of by litigating under Illinois law. As the <u>ISC-Bunker</u> court noted, an employer like Plaintiff that has employees who provide repair service on its equipment in virtually every state in the union has a strong interest in having its employment agreements uniformly construed under one state's law. 765 F.Supp. at 1335-36 (citing <u>Sarnoff v. American Home Products Corp.</u>, 792 F.2d 1075, 1081 (7th Cir. 1986)).

Accordingly, the Court will apply Illinois law in resolving the parties' dispute as the Supreme Court of Illinois would apply it if the case were before that tribunal. <u>See</u>, <u>e.g.</u>, <u>Ernie Haire Ford, Inc. v. Ford Motor Co.</u>, 260 F.3d 1285, 1290 (11th Cir. 2001).  Where the state's highest court has not spoken to an issue, a federal court "must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." <u>Id.</u> (citation omitted).

## Discussion

Restraints on free trade and the availability of services are looked upon with disfavor by the Illinois courts, <u>see</u>, <u>e.g.</u>, <u>Hanchett Paper Co. v. Melchiorre</u>, 792 N.E.2d 395, 400 (Ill. App. 2003) (citation omitted), where the enforceability of a restrictive covenant depends on its reasonableness in terms of its effect upon the parties to the contract and its effect upon the public. <u>A.B. Dick Co. v. American Pro-Tech</u>, 514 N.E.2d 45 (Ill. App. 1987). "Although the question of whether a restrictive covenant is enforceable is one of law and depends upon the reasonableness of its terms, the determination of reasonableness necessarily depends on the unique facts and circumstances of each case." <u>Eichmann v. National Hosp. and Health Care Services, Inc.</u>, 719 N.E.2d 1141, 1143 (Ill. App. 1999); <u>see also</u> <u>Bishop v. Lakeland Animal Hosp., P.C.</u>, 644 N.E.2d 33, 35-36 (Ill. App. 1994).

A noncompetition clause is enforceable in Illinois courts where, as here, the employee terminates the employment relationship if the time and territorial restrictions are reasonable and a protectable business interest exists on the part of the employer. <u>See</u> <u>LSBZ, Inc. v. Brokis</u>, 603 N.E.2d 1240 (Ill. App. 1992) (citations omitted).  Defendant does not dispute

that there is a protectable business interest at issue in the present case. Instead, Defendant challenges the enforceability of the noncompete clause on grounds that it lacks a defined geographic limitation and the extension provision of the time restraints set out in the agreement serves no legitimate purpose.

As to Defendant's argument that the noncompete clause is unenforceable because it has no geographic limitations, under Illinois law, where no time and area limitations are included in the contract, the trial court's have discretion to determine what limitations would be reasonable under the circumstances. See Eichmann, 719 N.E.2d at 1148. See also Alligiance Healthcare Corp. v. Coleman, 232 F.Supp.2d 1329, 1334 (S.D. Fla. 2002) (citing Flammer v. Patton, 254 So.2d 854, 859 (Fla. 1971)). As the Eichmann court observed, "a claim that lack of a geographic limitation automatically voids the contract would seem overly simplistic if the impermissible actions of the employee are more clearly limited by other means." 719 N.E.2d at 1148.

As set forth above, the Agreement merely restricts Defendant's actions as they relate to business contacts Defendant developed on Plaintiff's behalf or learned of through his employment with Plaintiff (Dkt. 2, Ex. A).[5]  In Illinois courts, "[c]ovenants containing no geographic limitation have been upheld as reasonable where the purpose of the restriction was to protect the employer from losing customers to a former employee who, by virtue of his employment, gained special knowledge and familiarity with the customers' requirements." Eichmann, 719 N.E.2d at 1147. See also Wolf & Co. v. Waldron, 366 N.E.2d 603 (Ill. 1977)

---

[5]Pursuant to Fed. R. Civ. P. 10(c) (2008), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

(since the employee was only restrained from contacting former clients, geographic location would serve no purpose). As in <u>Eichmann</u>, "the restrictive covenant[] here [does not] constitute[] a blanket prohibition on competition in that [Defendant] is not precluded from competing with [Plaintiff] 'for new customers as to which said customers are not clients of [Plaintiff].' The restrictive covenant[] at issue here, rather than prohibiting all competition within a particular geographical area, are limited to a particular type of activity, such as solicitation, or are limited to a specific customer group, . . . what has been termed an 'activity restraint.'" 719 N.E. 2d at 1147 (citation omitted).  Since the lack of a geographic restriction does not invalidate an employment restraint under Illinois law where the geographical prohibition is qualified by an activity restraint, Defendant's argument for dismissal on this grounds fails. Moreover, "it has long been recognized by the courts of Illinois that if the area covered by a restrictive covenant is found to be unreasonable as to area, it may be limited to an area which is reasonable in order to protect the proper interests of the employer and accomplish the purpose of the covenant." <u>Gillespie v. Carbondale and Marion Eye Cen., Ltd.</u>, 622 N.E. 2d 1267, 1270 (Ill. App. 1993).

Defendant's argument that the provision regarding the extension of the restrictive covenant in the event that the litigation is terminated in Plaintiff's favor is unenforceable is likewise flawed. Where the parties have agreed that the period of noncompetition be extended upon proof of a breach, Illinois courts enforce the extension of the restriction, thus insuring that the injured party receives that for which it bargained.  <u>See</u> <u>Prairie Eye Center</u>, 768 N.E. 2d 414, 425 (Ill. App. 2002).  As Plaintiff notes, Defendant has failed to provide

any legal authority for his assertion that "[o]ther Illinois courts have found that an extension is not warranted." In the instant case, as in <u>Prairie</u>, Plaintiff and Defendant Garcia expressly agreed that the Agreement's noncompete restriction would be extended for a period of one year following the termination of any litigation involving a breach thereof.

Finally, Defendant contends that the noncompete provision in the Agreement is unenforceable because he did not consent to an assignment of rights under the Agreement to Plaintiff. In support of his argument, Defendant relies totally on Florida case law. <u>See</u> <u>Corporate Express Office Products, Inc. v. Phillips</u>, 847 So. 2d 406 (Fla. 2003) (discussing the difference between a stock and an asset purchaser's rights to enforce a personal service contract)[6]; <u>Wolf v. James G. Barrie, P.A.</u>, 858 So. 2d 1083 (Fla. 2d DCA 2003); <u>Sun Group Enterprises, Inc. v. DeWitte</u>, 890 So.2d 410 (Fla. 5th DCA 2004). Defendant is correct -- if the name change was brought about by an asset purchase, the noncompete restriction would be unenforceable under Florida law. <u>See</u> <u>Corporate Express</u>, 847 So.2d at 415.  This case is, however, governed by Illinois law.

As the record reflects, the Agreement not to compete was executed by Defendant and Videojet Systems International, Inc., ("VSII") not Videojet Technologies, Inc., ("VTI"), and it is silent on the issue of assignment.[7] In its response, Plaintiff argues that the Agreement is

---

[6]In <u>Corporate Express</u>, the Florida Supreme Court found that the purchaser of stock that merges the corporation purchased into another and then changes its name could enforce a noncompete provision of an employment agreement. But, conversely, the purchaser of the assets of a corporation could not enforce the provisions of a noncompete agreement, without consent of the employee. 847 So.2d at 414-15.

[7]In support of its position that the Agreement is enforceable, Plaintiff relies on the holdings in <u>Anasarca Worldwide, Inc. V. Caruaru</u>, 244 F.Supp.2d 977, 982 (C.D. Ill. 2003) (where the employment contract is silent, an acquiring corporation can generally enforce the acquired company's restrictive covenants) (citations omitted); <u>Automat Technologies, Inc. v. Elder</u>, 160 F.Supp.2d 915, 924 (N.D. Ill. 2001) (same), and <u>Hexacomb Corp. v. GTW Enterprises,</u>

(continued...)

enforceable because there has been no assignment. According to Plaintiff, when the Agreement was executed, VSII was the owner of 100% of the stock of Marconi Data Systems, Inc., ("MDSI") a corporation organized under the laws of Delaware, and Marsh Company, a corporation organized under the laws of Illinois. On December 17, 1999, VSII merged MDSI and Marsh with and into itself (Dkt. 22, Ex. 1). According to the Certificate of Ownership and Merger filed with the State of Delaware on December 17, 1999, effective at the time of the merger, VSII amended its Articles of Incorporation to reflect the change in its corporate name from VSII to Marconi Data Systems. Id., Ex. 2. Affiant Rich Trojan, VTI Director of Human Resources, avers that when DH Holding Corporation bought 100 percent of the stock of MDSI in February, 2002, MDSI's name was changed to Videojet Technologies, Inc. (Dkt. 22 at 12).

Illinois law as to whether a personal service contract containing a noncompete prevision is assignable likewise does not favor Defendant. While contract rights are, generally, assignable, this rule is subject to exception where the assignment would very materially alter the duty of the obligor, increase materially the burden of risk imposed by the contract, or impair materially the obligor's chance of obtaining return performance.[8] Here, Defendant has made no showing that the services required of him by VTI changed in any

---

[7](...continued)
Inc., 875 F.Supp. 457, 464-65 (N.D. Ill. 1993) (same).

[8]See A-Tech Computer Services, Inc. v. Soo Hoo, 627 N.E. 2d 21 (Ill. App. 1993) (recognizing that an "employer has a valid interest in protecting its long-standing client relationships against the subterfuge and sabotage of former employees."); Hexacomb Corp. v. GTW Enterprises, Inc., 875 F.Supp. 457, 465-66 (N.D. Ill. 1993) (successor corporation in asset purchase can enforce covenants not to compete that employee signed with predecessor corporation; continued employment at same job deemed an acceptance).

material way due to the corporate restructuring that has occurred since the VSII Agreement was executed. Both before and after restructuring, Defendant's duties involved the sale and service of Plaintiff's products.  While changes in level of responsibility occurred in 2002 and 2006, the changes were the results of promotions Defendant received rather than an arbitrary shifting of duties.

Defendant's assertion that Plaintiff is "required to plead why it claims the right to enforce a noncompete agreement to which it is not a party" also fails. It is well-settled that "[i]n a diversity action, the adequacy of the pleadings is assessed in accordance with the federal, not state, rules of civil procedure." See Erie R.R. Co. v. Thompkins, 304 U.S. 64, 78 (1938); Integrated Genomics, Inc. V. Kyrpides, 2008 WL 630605 *1, at *7 (N.D. Ill. Mar. 4, 2008); Fed. R. Civ. P. 1 ("These rules govern the procedure in the United States district courts in all suits of a civil nature"). Illinois courts operate under a fact pleading standard; federal courts, on the other hand, operate under a "notice pleading" standard, see Fed. R. Civ. P. 8 (2008). See Papa John's Intern., Inc. v. Rezko, 446 F.Supp.2d 801 (N.D. Ill. 2006). Thus, Plaintiff need only plead facts sufficient to provide Defendant with fair notice of what the claim is and the grounds upon which it rests, see United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003), a burden which the Court is convinced Plaintiff has met. See Fed. R. Civ. P. 8(a) (2008). Were the Court to conclude, to the contrary, that the pleading is legally insufficient, Plaintiff would be entitled to amend its pleading to cure the deficiency. See Fed. R. Civ. P. 15(a).

Having reviewed the complaint, the Court concludes that Plaintiff has sufficiently alleged a cause of action to withstand a Rule 12(b)(6) challenge. The Court further rejects Defendant's suggestion that he is entitled to judgment as a matter of law under Fed. R. Civ. P. 56.

It is therefore **ORDERED and ADJUDGED** that Defendant Garcia's Dispositive Motion to Dismiss or in the Alternative Motion for More Definite Statement With and [Sic] Incorporated Memorandum of Law (Dkt. 17) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on June 12, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2007\07-cv-1407 Garcia Motion to Dismiss New.wpd